# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVELYN NICE, | ) | |
| | ) | |
| Plaintiff, | ) | 2:06-cv-1444 |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

**I.      Introduction**

Pending before the court are cross-motions for summary judgment based on the administrative record: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 15) and PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Document No. 17). The motions have been fully briefed and are ripe for resolution.

Plaintiff, Evelyn Nice, brought this action pursuant to 42 U.S.C. § 405(g) and §1383(c)(3) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403; 1381-1383f.

**II.    Background**

    **A.    <u>Facts</u>**

Plaintiff was born on July 5, 1955, and was 49 years old at the alleged onset date, which means that at the time, she was defined as a "younger individual" pursuant to 20 C.F.R. § 404.1563 and §416.963. R. 19. By the date of the hearing, Plaintiff was classified as an "individual closely approaching advanced age." Plaintiff has a high school education. Plaintiff's relevant work history as a retail cashier and a motel housekeeper is characterized as light and unskilled. Her last day of work as a retail cashier was July 15, 2004. Her earnings record reveals that she has acquired sufficient coverage to remain insured through December 31, 2009. R. 16.

Plaintiff alleges disability as of July 15, 2004 due to depression, asthma, spurs in both heels, and bad knees, back, and neck. R. 208. On September 30, 2004, Plaintiff was seen at Westmoreland Hospital with complaints of anxiety and depression. R. 258-261. On October 4, 2004, Plaintiff was seen again at Westmoreland with the same complaints. R. 262-265. In December of 2004, Plaintiff began receiving counseling at the Comprehensive Counseling Center. R. 317-319. At each visit through December and January, she was ordered cognitive behavior therapy. R. 317-319. At her February 9, 2005 visit, Plaintiff was prescibed Paxil. R. 315. Plaintiff did not show signs of improvement through three visits in April and her medications were switched to Lexapro and Seroquel. R. 364-366. On May 2, 2005, Plaintiff was instructed to continue with her medications. R. 363.

On February 3, 2005, Plaintiff underwent a psychological consultative exam performed by Lisa Cannon, Psy. D. Dr. Cannon diagnosed Plaintiff with major depressive

disorder, panic disorder without agoraphobia, and a learning disorder. R. 309. Dr. Cannon reported that Plaintiff had marked limitations with regard to understanding and remembering detailed instructions, carrying out detailed instructions, making judgments on simple work-related decisions, and responding appropriately to work pressures in a usual work setting. R. 312. Dr. Cannon reported that Plaintiff had moderate limitations with regard to her understanding and remembering short simple instructions, carrying out short simple instructions, interacting appropriately with the public, interacting appropriately with supervisors, interacting appropriately with co-workers, and responding appropriately to changes in a routine work setting. R. 312. In addition to these findings, Dr Cannon assessed Plaintiff's "Global Assessment of Functioning" or GAF to be 45. R. 309.

During the consultative exam, Dr. Cannon noted that Plaintiff was cooperative, appeared depressed and often seemed on the verge of crying, and was "somewhat tangential" when answering and "sometimes less than goal-directed". R. 307. Dr. Cannon also noted that Plaintiff was limited in her ability to use abstract thought and that her fund of general knowledge was somewhat lacking. R. 307-8. Plaintiff was unable to answer a number of general knowledge questions and was unable to complete the serial sevens task. R. 308. With regard to recent memory, Plaintiff was able to recall eight digits forward and five digits backward. R. 308. Further, Dr. Cannon noted that Plaintiff had difficulties in the area of social judgment as she was extremely passive and lacked a degree of awareness of her difficulties. R. 308-309.

Under the heading JUDGMENT, Dr. Cannon noted:

> The claimant does seem to have difficulties in the area of social
> judgment. She seems to be an extremely passive individual who

> is guided by other people without really using her own judgment.
> For instance, the claimant said that her daughter will tell her what
> to do or even yell at her to do things to get her to do things that
> she is supposed to do such as, for instance, cleaning up some of
> the clutter in the house. This difficulty with the extreme passivity
> and trouble being guided by her own judgment was evidenced
> when the claimant tried to answer the test question of what she
> would do if she were sitting in a theater and smelled smoke. She
> answered in a kind of demure way, "Oh, I'd be really scared. I'd
> probably just run away."

R. 308-309.

Dr. Cannon concluded that with medication and therapy, Plaintiff's prognosis for the remission of her depression symptoms were good. R. 309. However, she further concluded that Plaintiff's tendency to be passive and dependent and concerns about her cognitive abilities remained and that Plaintiff's prognosis in those areas were poor. R. 309.

On February 4, 2005, some of Plaintiff's records were reviewed by Dalton Raymond, Ph.D., a state agency psychologist. Dr. Raymond opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, to carry out detailed instructions, to interact appropriately with co-workers, and to respond to changes in the work setting. R. 344-45. Dr Raymond further opined the Plaintiff was not significantly limited in her ability to make judgments on simple work-related decisions, to interact appropriately with the public, and to remember and carry out short and simple instructions. R. 344-45.

As Plaintiff challenges the ALJ's decision based solely on Plaintiff's alleged psychological limitations, the Court will not include a lengthy factual section devoted to Plaintiff's physical ailments.

### B. Procedural History

Plaintiff protectively filed applications for DIB and SSI on September 20, 2004, alleging disability since July 15, 2004. R. 14, 195-97. The claim was denied. R. 166-74. At Plaintiff's request an administrative hearing was held on April 5, 2006 before Administrative Law Judge John J. Porter ("ALJ"). R. 175. Plaintiff was represented by counsel and testified at the hearing. Irene Montgomery, a vocational expert, also testified at the hearing. R. 374-412.

On May 25, 2006, the ALJ rendered a decision which was unfavorable to Plaintiff under the five-step sequential analysis used to determine disability. R. 12-21. The ALJ determined at step one that Nice was not engaging in substantial gainful activity. R. 16. At step two, the ALJ found that she has the following severe impairments: "Asthma, depression, and a panic disorder." R. 16. At step three, the ALJ concluded that Nice's impairments did not meet or equal one of the "listed impairments" set forth in 20 C.F.R. 404 Subpart P, App. 1. R. 17. At step four, the ALJ determined that Nice was unable to return to her past relevant work as a motel housekeeper or retail cashier. R. 19. However, at step five, the ALJ concluded that the government had met its burden to show that Nice had the residual functional capacity to perform other work that exists in the national economy. R. 14-21. The ALJ's decision became the final decision of the Commissioner on July 28, 2006, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. R. at 7-9 . This litigation followed.

## III. Legal Analysis

### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g). If the Commissioner's finding is supported by substantial

evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,

(2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

**B.     Discussion**

Plaintiff contends that the ALJ failed to proffer a hypothetical which accurately set forth all of the Plaintiff's specific work-related limitations of function as documented in the administrative record. Plaintiff argues that the ALJ's hypothetical made vague reference to Plaintiff being able to perform "simple routine repetitive tasks" without specifically referencing the limitations flowing from the examination and report of Dr. Cannon. Therefore, Plaintiff argues that the ALJ's finding that Plaintiff is not disabled is not supported by substantial evidence.

The Commissioner contends that the ALJ's hypothetical question to the vocational expert fairly set forth all of Plaintiff's limitations that were supported by the record. The "[t]estimony of vocational experts in disability determination proceedings typically includes,

7

and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "The ALJ will normally ask the expert whether, given certain assumptions about a claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Id*. Although "the ALJ may proffer a variety of assumptions to the expert, the expert's testimony concerning alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Id*.; *see also Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). If a hypothetical question does not reflect all of a claimant's impairments that are supported by the record, "the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *see also Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004); *Burns*, 312 F.3d at 123.

    1. *Hypothetical Questions to the VE*

In this case, the ALJ posed two questions to the vocational expert. First, the ALJ asked the expert to:

> Assume a hypothetical individual who's able to work at the light exertional level...who's limited to simple, routine, repetitive tasks not performed in a production or quota based environment, involving only simple work-related decisions, and in general, relatively few workplace changes, who's limited to occasional interaction with supervisors, co-workers and the general public: would such a person be able to perform the retail cashier or housekeeping motel position, either as customarily performed or as actually performed by Ms. Nice?

R. 407. In response to this hypothetical, the expert opined that Plaintiff could not perform the retail cashier or housekeeping positions in which she was previously employed, but could perform a number of positions present in the national economy. R. 408.

The ALJ then posed a second hypothetical:

> Please assume a second hypothetical individual that would have the same abilities and limitations as the first hypothetical, but this person would not be able to be on task two hours per day on a regular and continuous basis. Are there jobs in the national and local economy that such a person could perform?

R. 408. In response to the second hypothetical, the expert opined that such an individual would not be able not be able to perform any jobs on a full-time, regular, and consistent basis. R. 408.

2. *Mental Impairments*

Plaintiff argues that the ALJ's original hypothetical contains an assumption that Plaintiff is capable of making simple work decisions. Plaintiff also claims that the ALJ omitted a second limitation, that Plaintiff could not tolerate basic work stresses, which was fully supported by the record. The Court agrees with Plaintiff's argument that the ALJ's treatment of Dr. Cannon's opinions needs further clarification.

The ALJ discussed Dr. Cannon's examination and opinion in his determination. In the section devoted to Dr. Cannon's opinion, the ALJ stated, "Dr. Cannon placed severe limitations on the claimant's ability to follow instructions and maintain appropriate social interactions. However, these limitations do not correlate with the objective findings during the examination and accordingly, the undersigned affords it little weight." R. 20. The ALJ gave no explanation for this finding, nor did he address several other limitations that Cannon considered to be "marked" including the two with which Plaintiff takes issue.

9

In her report, Dr. Cannon opined that Plaintiff had marked limitations with regard to understanding and remembering detailed instructions, carrying out detailed instructions, making judgments on simple work-related decisions, and responding appropriately to work pressures in a usual work setting. Dr. Cannon further reported that Plaintiff had moderate limitations with regard to her understanding and remembering short simple instructions, carrying out short simple instructions, interacting appropriately with the public, interacting appropriately with supervisors, interacting appropriately with co-workers, and responding appropriately to changes in a routine work setting. R. 20. The record correlating to these findings was the testing and questioning performed by Dr. Cannon at the consultative exam. R. 303-311.

While the ALJ's hypothetical dealt with most of Cannon's findings of limitations, it ignored Cannon's finding of two marked limitations with regard to Plaintiff's ability to make judgments on simple work-related decisions and respond appropriately to work pressures in a usual work setting. The ALJ's hypothetical individual was capable of making simple work-related decisions. The hypothetical did not include any reference to the hypothetical individual's ability to respond appropriately to work pressures in the usual work setting. The ALJ failed to address why he adopted some of Dr. Cannon's findings and ignored others. While it is true that Dr. Raymond opined that Plaintiff was not significantly limited in her ability to make simple work-related decisions, the ALJ did not address this portion of Dr. Raymond's Functional Capacity Evaluation in his opinion and only gave the remainder of that opinion and that of any non-treating or non-examining physicians "some weight", but did not give any further explanation. R. 19.

The lack of explanation and ambiguity in the ALJ's RFC finding and the resulting potential deficiency in the hypothetical question at issue necessitate a remand to the Commissioner. *See Podedworny*, 745 F.2d at 218-19. On remand, the ALJ should clarify his findings with respect to Plaintiff's ability to make judgments on simple work-related decisions and to respond appropriately to work pressures in a usual work setting as well as ensure that his hypothetical question to the vocational expert accurately portrays the nature and extent of Plaintiff's mental impairments as reflected in the record. In clarifying his RFC and disability findings, the ALJ must consider Dr. Cannon's opinion that, among other things, Plaintiff has marked limitations in the ability to make simple work-related decisions and the ability to respond appropriately to work pressures in a usual work setting. If, after so doing, the ALJ chooses to discredit Dr. Cannon's opinion, he must provide an adequate explanation to support such a finding. *See Akers v. Callahan*, 997 F. Supp. 648, 661 (W.D. Pa. 1998); *Fargnoli v. Massanari*, 247 F.3d 34, 43-44 (3d Cir. 2001).

## IV.  Conclusion

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, the Court finds that the ALJ's failure to properly address Dr. Cannon's findings in his RFC finding and potentially in his hypothetical question to the vocational expert may have led to an incorrect decision by the ALJ that Plaintiff was not disabled as that term is defined by the Social Security Administration. The case is therefore remanded for further consideration in light of this Opinion.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVELYN NICE, | ) |
| | ) |
| Plaintiff, | ) 2:06-cv-1444 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**ORDER OF COURT**

**AND NOW**, this 15th day of October, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. Defendant's Motion for Summary Judgment (Document No. 15) is **Denied.**

2. Plaintiff's Motion for Summary Judgment (Document No. 17) is **Granted** insofar as the matter is **Remanded** for further proceedings consistent with the foregoing opinion. Plaintiff's Motion for Summary Judgment is **Denied** in all other respects.

3. The Clerk will docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Karl E. Osterhout, Esquire
Email: karl@keolaw.com

_____ Jennifer Andrade, Esquire
Email: jennifer.andrade@usdoj.gov